# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BONNIE CASTLE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:18-cv-06888 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| GLOBAL CREDIT & ) | |
| COLLECTION CORP., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bonnie Castle received a letter from a debt collector, Defendant Global Credit & Collection Corporation, to collect an outstanding balance on her credit card account. That was news to her. Plaintiff had settled with the owner of that debt, Defendant LVNV Funding, LLC, about six months earlier. One month after the first letter, Global Credit sent a second one, this time offering to settle the debt for 50 cents on the dollar (when, mind you, she owed nothing). Plaintiff, feeling "annoyed and harassed," filed this lawsuit. Cplt. ¶ 60.

At first, Defendants engaged the dispute in this federal forum. But a few months later, Defendants moved to compel arbitration. That tactical move was not a complete surprise. After all, Defendants invoked the possibility of arbitration in their answers. Plaintiff now argues that Defendants waived their right to arbitration by not filing their motions sooner.

In light of the strong federal policy favoring arbitration and the enforcement of arbitration agreements, this Court holds that Defendants did not waive their right to arbitration. Defendants did not act with alacrity, but they did not delay the issue long enough to surrender their contractual right to arbitration.

**Background**

Plaintiff Bonnie Castle applied online for a credit card with Credit One Bank, N.A. in 2014. *See* Dckt. No. 39-1, at ¶ 13. During the application process, Plaintiff had access to the proposed credit agreement, and acknowledged its terms by finalizing the application. *Id.* at ¶ 15. Credit One accepted her application and opened her credit card account, which she used for several years. *Id.* at ¶ 14; Dckt. No. 39-4. Sometime later, Credit One amended the credit agreement, and mailed a copy to Plaintiff. *See* Dckt. No. 39-1, at ¶ 16; Dckt. No. 39-3. She continued to use her account. *See* Dckt. No. 39-1, at ¶ 17; Dckt. No. 39-4.

Both the original and amended agreements included an arbitration provision. *See* Dckt. No. 39-2, at 6-7; Dckt. No. 39-3, at 6-7. The arbitration provision was not hidden in the depths of a long contract. Instead, the title of the agreement itself – the **VISA/MASTERCARD CARDHOLDER AGREEMENT, DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT** – highlighted the agreement to arbitrate. *See* Dckt. No. 39-2, at 2 (bold in original); Dckt. No. 39-3, at 2 (same). The agreement devoted an entire section to arbitration, spanning a full page. *See* Dckt. No. 39-2, at 6-7; Dckt. No. 39-3, at 6-7.

The agreement entitled either party to submit "any controversy or dispute between [the parties] . . . to mandatory, binding arbitration." *See* Dckt. No. 39-2, at 6; Dckt. No. 39-3, at 6. "Claims subject to arbitration include . . . collections matters relating to your Account." *See* Dckt. No. 39-3, at 6. The agreement covered class actions, too. *Id.* Either party had a right to "compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction." *Id.* at 7.

The parties agreed that it was fair game to demand arbitration until the eve of trial itself: "Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a

trial has begun or a final judgment has been entered." *Id.* The parties also agreed that a delay in enforcing the right to arbitration would not be a waiver (although the parties presumably could waive that non-waiver provision). "Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims." *Id.*

In 2017, Credit One assigned the rights to Plaintiff's account to a credit agency, and the receivables went through a string of assignments from one company to another. *See* Dckt. No. 39-1, at ¶¶ 22-23; Dckt. No. 39-5, at ¶¶ 3-6; Dckt. No. 39-6, at ¶¶ 3, 6; Dckt. No. 39-7, at ¶¶ 3-6. At the end of the string, Defendant LVNV, a debt collection agency, ultimately acquired Plaintiff's account. *See* Dckt. No. 39-7, at ¶ 6; Dckt. No. 39-8, at ¶ 3. LVNV assumed all "rights, title, and interest in" Plaintiff's account. Dckt. No. 39-8, at ¶ 3.

Later that year, LVNV sued Plaintiff to collect an outstanding balance on her credit card account. *See* Cplt. ¶ 35. The parties settled the suit and released Plaintiff from her debt in January 2018. *Id.* at ¶ 36. Sometime after settlement, Defendant Resurgent Capital Services, L.P., a debt collection agency acting on behalf of LVNV, hired Defendant Global Credit to collect the discharged debt. *Id.* at ¶ 37. Aptly-named Resurgent attempted to collect a debt that Plaintiff no longer owed.

Global Credit sent Plaintiff two collection letters. *Id.* at ¶¶ 39, 44. The first letter claimed that Castle owed a balance of $2,203.79, and that Global Credit was "authorized to collect the outstanding amount owed." *See* Dckt. No. 1-1, at 2. The letter failed to acknowledge that the debt was settled. But reading between the lines, Global Credit seemed aware of the fact that it needed to tread lightly. After requesting payment for an expired debt, Global Credit offered a nugget of truth: "The law limits how long you can be sued on a debt. Because of the

age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency." *Id.*

Global Credit tried again one month later. Global Credit sent Castle a second letter, claiming that it had "approval to settle your account." *Id.* at 5. Global Credit floated a 50% haircut, offering to settle for $1,101.90. *Id.* Global Credit didn't mention that, in truth, Castle owed nothing.

Instead of paying a debt that she did not owe, Castle turned the tables. On October 12, 2018, Castle filed suit under the Fair Debt Collection Practices Act on behalf of herself and a putative class. Plaintiff essentially alleges that the letters were a trick. The debt was time-barred, but making a partial payment on the debt arguably could have restarted the statute of limitations. *See* Dckt. No. 1, at ¶ 43; *see also Pantoja v. Portfolio Recovery Assoc., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (discussing the "danger that a debtor who accepts the offered terms of settlement will, by doing so, waive his otherwise absolute defense under the statute of limitations"). By luring an otherwise unsuspecting consumer into making a payment, the collection agency could turn nothing into something.

Defendants did not immediately move to compel arbitration. Instead, they answered the complaint in early December 2018. Two of the three defendants asserted a right to arbitration in their answers. *See* Dckt. No. 23, at 14 (third affirmative defense); Dckt. No. 24, at 14 (third affirmative defense). The third defendant also invoked arbitration in its answer, but only as a basis to oppose class certification. *See* Dckt. No. 25, at 23 (sixth affirmative defense) ("Class certification is not appropriate in this matter . . . . Furthermore, the existence of an arbitration agreement may prohibit Plaintiff from maintaining this action on behalf of a class.").

In the months that followed, Defendants participated in this suit without raising the issue of arbitration. The Joint Initial Status Report (filed on December 13, 2018) identified the "major legal and factual issues," but did not mention of the possibility of arbitration. *See* Dckt. No. 27, at 2. Defendants also participated in the Mandatory Initial Discovery Pilot Project without objecting based on an agreement to arbitrate. *See* Dckt. Nos. 30-31.

The Court issued a scheduling order under Rule 16(b) and set a deadline of August 30, 2019 for the completion of fact discovery. *See* Dckt. No. 28. Apart from a motion for a protective order, the parties did not file any motions or seek any relief from the Court. So, for example, Plaintiff did not file a motion for class certification, and Defendants did not file a motion to dismiss. Instead, they began discovery.

The possibility of arbitration resurfaced on March 28, 2019, almost four months after Defendants filed their answers (in early December). At a status hearing – five months before the close of fact discovery – Defendants informed the Court that they intended to move to compel arbitration. *See* Dckt. No. 37; Dckt. No. 61, at 7. The Court ordered Defendants to file any motions to compel arbitration by May 7, 2019. *See* Dckt. No. 37. Defendants met the deadline and moved to compel arbitration. Dckt. Nos. 38, 41. At that point, the fact discovery deadline was 115 days away. *See* Dckt. No. 28.

Plaintiff does not dispute that her claims are covered by a valid arbitration agreement. Instead, she argues that Defendants waived their right to arbitration.

## Discussion

Courts review motions to compel arbitration under a summary judgment standard. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a

5

trial on the merits of the contract." *Id.* The Court must accept the complaint's allegations as true, and draw "all justifiable inferences" in Plaintiff's favor. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). Congress enacted the Federal Arbitration Act "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Simply put, "courts must rigorously enforce arbitration agreements according to their terms." *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (internal citations omitted).

The Act provides that an arbitration provision in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embraces "both a liberal federal policy favoring arbitration[] and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (describing a "national policy favoring arbitration"); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[Q]uestions of arbitrability must be addressed with a

healthy regard for the federal policy favoring arbitration . . . . The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

To promote arbitration, the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer*, 500 U.S. at 25. A court may compel arbitration if the movant demonstrate three elements: (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Plaintiff does not dispute that this case satisfies all three requirements. She entered into an agreement to arbitrate. This dispute falls squarely within the scope of the arbitration agreement. And Plaintiff has refused to arbitrate. Instead, she argues that Defendants have waived their right to arbitration.

"Like any other contractual right, the right to arbitrate can be waived." *See Smith v. GC Services Ltd. Partnership*, 907 F.3d 495, 499 (7th Cir. 2018). To find a waiver, courts "must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).

A court may consider several factors in its waiver analysis, including whether the party seeking arbitration "participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* Prejudice to the non-waiving party is a relevant, but not necessary, factor. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969

7

F.2d 585, 590 (7th Cir. 1992). Diligence, however, is the most significant factor. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); *Cabinetree of Wisconsin v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

The Court must "determine as a matter of fact whether the party filing the lawsuit intended to elect a judicial forum rather than the arbitral tribunal." *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999). "[W]hen a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate." *Kawasaki*, 660 F.3d at 995. And yet, as the party asserting waiver, Plaintiff bears a "heavy burden" to negate the "strong federal policy favoring enforcement of arbitration agreements." *St. Mary's*, 969 F.2d at 509 (internal citations omitted). A court should not "lightly infer waiver." *Id.* (internal citation omitted).

Plaintiff argues that Defendants waived their right to arbitration by waiting too long to file their motion. (In reality, Plaintiff is arguing that there was forfeiture, not waiver. *See Smith v. GC Services Ltd. Partnership*, 907 F.3d 495, 498-99 (7th Cir. 2018)). She points out that the parties began discovery and even agreed to a discovery schedule. *See* Dckt. No. 54, at 5. Relying on *Smith*, Plaintiff argues that Defendants did not diligently pursue arbitration and instead created "significant delays." *Id.*

*Smith* does not lend much of a hand. On the surface, the cases seem similar. Smith's credit card agreement included an arbitration provision, and the bank hired a debt collector to pursue an unpaid balance. *Id.* at 497. The debt collector told Smith that they were going to start collection proceedings if she did not challenge the debt in writing. *Id.* Smith brought a class action alleging FDCPA violations, and months later, the debt collector moved for arbitration. *Id.* at 497-98.

8

But that's where the similarities end. The parties in *Smith* fully engaged the federal forum, acting as if they were staying in federal court for the long haul. Smith filed a motion for class certification, which the parties briefed. *Id.* The debt collector also filed two motions to dismiss without mentioning arbitration. *Id.* at 498. The parties then threw themselves into discovery. The parties participated in conferences, and the Court ordered the debt collector to produce documents. Even then, the debt collector never flagged the possibility of exiting the courthouse for arbitration. *Id.*

After eight months in federal court, the debt collector sent Smith a letter demanding arbitration, but kept the Court in the dark. *Id.* After Smith refused arbitration, the debt collector dropped the issue. The company filed an answer without mentioning arbitration. *Id.* Litigation continued, "[m]onths passed," and the debt collector "made no attempt – on the docket or off – to compel arbitration." *Id.*

The district court then issued a series of substantive rulings, denying the second motion to dismiss and granting the motion for class certification. *Id.* One month later, the debt collector finally moved to compel arbitration. That motion arrived on the docket thirteen months after the filing of the suit, and five months after first demanding arbitration. *Id.* After a string of losses, the debt collector finally attempted to leave federal court.

By comparison, the parties in this case did not put down roots in federal court. The parties have not filed any substantive motions in this case. Defendants have not filed a motion to dismiss, and Plaintiff has not filed a motion for class certification. Neither party has requested, let alone received, a substantive ruling from the Court on any issue. Defendants are not retreating from an unfavorable forum. They are not climbing into the escape hatch of arbitration because things haven't gone their way.

9

The parties also have not made much progress in discovery. When Defendants told the Court that they would move for arbitration, the discovery deadline was five months away. At that point, the parties had served an initial wave of written discovery, but did not get very far. Defendants produced documents (Plaintiff does not reveal how many) on February 19, 2019, about a month before they raised arbitration at the status hearing on March 28, 2019. *See* Dckt. No. 54, at 4. The parties say nothing about depositions, so presumably they had taken none.

The motions for arbitration were not a complete surprise, either. Defendants alerted Plaintiffs about the possibility of arbitration in their answers, the very first substantive filing. *See* Dckt. No. 54, at 6; *see also* Dckt. No. 23, at 14; Dckt. No. 24, at 14; Dckt. No. 25, at 23. Right out of the gate, Plaintiff knew that this case might be headed to arbitration. In addition to that filing, Defendants notified the Court about arbitration at a status hearing, and met the Court's deadline.

True, Defendants gave a relatively weak reason for their initial delay. Defendants basically argue that they belatedly found the Plaintiff's arbitration agreement. *See* Dckt. No. 61, at 5-6. The Seventh Circuit cast a skeptical eye on that excuse in *Smith* – after all, a debt collector is a sophisticated entity with an entire business built on enforcing consumer agreements. *See Smith*, 907 F.3d at 500 ("The initial suggestion that GC Services – a sophisticated debt collection agency – would be unaware that credit card agreements routinely include arbitration agreements is suspect."). Still, the Seventh Circuit "set aside the initial eight-month dalliance," and found that the debtor collector committed itself to federal court in the ensuing five months. *Id.* So the initial delay in finding the arbitration agreement didn't weigh heavily against them. In any event, the excuse is a little more plausible in this case given how many times Plaintiff's account was assigned.

Plaintiff brushes off the demand for arbitration in the answers as "boilerplate," but that makes no difference. *See* Dckt. No. 54, at 6. Boilerplate language counts in a contract, *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 667 (7th Cir. 2003), and there is no apparent reason why it shouldn't count in an answer, too. The Federal Rules merely require a "short and plain" description of the defenses, nothing more. *See* Fed. R. Civ. P. 8(b)(1)(A). It is not exactly uncommon for answers to contain boilerplate. Answers aren't the land of creative writing. And complaints often contain boilerplate, too, at least when articulating the counts and the remedies.

The second case cited by Plaintiff doesn't help her cause, either. *See Cabinetree of Wisconsin v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995). The defendant in *Cabinetree* affirmatively invoked the jurisdiction of the federal court. The defendant removed the case from state court to federal court, and that decision reflected a commitment to litigate in federal court for good. *Id.* at 390. The Seventh Circuit held that an "election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Id.* The defendant picked a new forum once, but couldn't pick a new forum twice.

In *Cabinetree*, there was "no plausible interpretation of the reason for the delay except that [the defendant] initially decided to litigate its dispute . . . in the federal district court, and th[en] later . . . changed its mind and decided it would be better off in arbitration." *Id.* at 391. "It wanted to play heads I win, tails you lose." *Id.*

Not so here. Defendants never asked to be in federal court, and never rolled the dice on any substantive motions. Defendants also did not entrench themselves in this federal forum. The parties in *Cabinetree* produced thousands of documents in discovery, and trial was only five months away. *Id.* at 389-90. Here, discovery was just getting started, and there was no trial date on the calendar. No one dropped a "bombshell." *Id.* at 389.

11

Plaintiff has failed to show that she suffered any prejudice from the motions for arbitration. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 590 (7th Cir. 1992). She cannot claim surprise because Defendant invoked arbitration in their answers. Her reliance interests are slight, too. She has not obtained any favorable rulings from this Court, and has not expended any resources filing motions, either. At the end of the day, Plaintiff may be disappointed to leave federal court, but disappointment is not a reason to frustrate an express contractual right.

Finally, Plaintiff's waiver argument sits uncomfortably with the plain language of the agreement. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *Epic Sys. Corp.*, 138 S. Ct. at 1621. Here, the agreement entitles the parties to compel arbitration "at any time, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered." Dckt. No. 39-3, at 7. The parties also agreed that delay was not a waiver: "Failure or forbearance to enforce this Arbitration Agreement at any particular time . . . will not constitute a waiver of any rights to require arbitration at a later time." *Id.* Maybe there could be a case when a party waives a non-waiver provision. But on these facts, this case isn't it.

## Conclusion

Congress created a strong federal policy in favor of arbitration, and courts must respect the policy decisions of the political branches. Plaintiff agreed to arbitration in the contract, and she has not met her burden of establishing a waiver. The motions to compel are granted. The case is stayed until the completion of arbitration. *See* 9 U.S.C. § 3.

Date: January 10, 2020

_____
Steven C. Seeger
United States District Judge